# MARIA HAATAJA v. JACOB SAARENPAA and Others.[1]

June 21, 1912.

Nos. 17,491—(99).

**Cancelation of deed after decree of probate court awarding land.**

A deed, executed by the grantors in consideration of the agreement of the grantee to care for and support the former during lifetime, may be canceled, in an equitable action brought for such purpose, for failure of the grantee to perform his agreement, notwithstanding that the latter is dead, and the probate court, in administering his estate, has awarded the land to the decedent's wife for life, with remainder to their child.

**Cross-examination of party — objection to witness.**

An objection to the calling of one of several defendants for cross-examination under the statute, "for the reason that he is not in any manner interested in this case," does not challenge the competency of the witness under R. L. 1905, § 4660, on the ground that he is the husband of one of the other defendants and cannot be called without her consent.

**Action to cancel deed — laches.**

An action to cancel a conveyance of land, executed in consideration of an agreement by the grantee to support the grantors, on the ground of the former's failure of performance, *held* not barred by laches or waiver.

**Same — decision sustained by the findings.**

Cancelation of a conveyance made in consideration of an agreement by the grantee to support the grantors, on the ground that there has been a substantial failure of consideration, by reason of repudiation and failure of performance on the part of the grantee and his successor, held warranted by the findings.

Action in the district court for Wright county to have a certain deed canceled, to have plaintiff declared to be the owner of a life estate in the premises, and of an undivided seven-ninths interest in fee simple, subject to a certain mortgage, and to require Anna S. Saarenpaa and Esther Augusta Hardy to account to plaintiff for the proceeds of the sale of personal property, and for the rents and

[1] Reported in 136 N. W. 871.

profits of the land since Anna S. Saarenpaa received the same. The answer alleged that the land was worth no more than $1,600; that the personal property was worth no more than $350; that Herman Hardy had paid in interest and taxes the sum of $544; that the total amount received by his administratrix, the defendant Anna, after paying the debts was $358.50. Defendants further alleged that at the time Herman Hardy died only a small part of the personal property transferred to him remained in specie, but that the farm machinery received from his father had become worn out and worthless; that Herman treated his parents with kindness and cared for and supported them; denied that defendants had ever abused plaintiff or refused to carry out the terms of the life lease; alleged that plaintiff was fault finding and quarrelsome. The reply was a general denial. The case was tried before Giddings, J., who denied the motions of each of the defendants to dismiss the action on the ground that the court had no jurisdiction, and made the findings and conclusions set forth in the opinion. From the judgment entered pursuant to the findings, defendants appealed. Affirmed.

*Henry Spindler* and *W. H. Cutting*, for appellants.

*O. J. Larson, M. E. Louisell* and *John Saari*, for respondent.

PHILIP E. BROWN, J.

Action for the cancelation of a deed and support contract on the ground of fraud, and also for a breach of the contract. The cause was tried by the court, findings were filed, and a judgment was ordered for the cancelation of the deed and the contract because of the breach of the latter. A case was settled. Judgment was thereafter entered pursuant to the findings. This is an appeal by the defendants from the judgment.

The court found the following facts in substance:

The plaintiff is the widow of John Hardy, and is about seventy-five years old. On April 28, 1896, John Hardy, being then the owner in fee of eighty acres of land in Wright county, the homestead of himself and the plaintiff, and of the value of $2,000, incumbered, however, by mortgages for $600 and $135, respectively,

and of personal property of the value of about $500, conveyed the said real property by deed of warranty in the ordinary form, containing neither exceptions nor reservations, and assigned the said personal property, his wife, this plaintiff, joining therein, to their sons, Herman and Gust Hardy. The sole consideration of the conveyance of the land and the transfer of the personalty was an oral agreement on the part of the said Herman and Gust Hardy to provide each of their parents with a home on the said premises, and certain described articles and farm produce during each year of their lives, and to care for, provide, and maintain them in sickness, in old age, and thereafter throughout the remainder of their lives. The grantees also, as a part of the consideration for the execution of the said conveyance, assumed and promised to pay the said mortgages.

On April 1, 1898, Gust Hardy quitclaimed his interest in the said real property to Herman Hardy and withdrew from the said agreement. On April 2, 1898, the contract referred to was reduced to writing in the form of a life lease, and executed by the said Herman Hardy and his wife, Kate Hardy, since deceased. This lease was recorded in the office of the register of deeds of said county on April 4, 1898. On December 11, 1899, the said John Hardy died intestate, leaving surviving him his said wife, this plaintiff, and nine children, eight of whom are still living. On May 18, 1904, the said Herman Hardy died intestate, leaving surviving him his second wife, now Anna S. Saarenpaa, one of the defendants, and their minor child, the defendant Esther Augusta Hardy. After the death of the said Herman, his wife was appointed administratrix of his estate, and she sold substantially all of the personal property then on the homestead. The said personal property was assigned to her by the probate court of Wright county, and the said real property, which was the homestead, was by the final decree of the said court of the said county, assigned to her for life, with remainder in fee to the said child, Esther. Since the conveyance of their homestead by the plaintiff and her husband, and the assignment of John Hardy's personal property above mentioned to their sons, the said Herman, or his wife, the defendant Anna S. Saarenpaa, has received the rents

118 M.—17.

and profits of the land and has been in possession thereof, either in person or by tenants, and has also had the use and benefit of the personal property.

Herman Hardy did not care for the plaintiff and her husband during his lifetime in accordance with the said support contract, but ill-treated and abused them, and violated the contract as early as December 11, 1899. A short time after Herman's death the defendant Anna removed from the land, and has refused and neglected since then to comply with the spirit and intent of the contract, and to furnish a home for the plaintiff on the premises, or with the necessaries of life, or to care for her in sickness and old age. In short, substantial and material breaches of the agreement to support the plaintiff and her husband, and each of them, have occurred; and the plaintiff is feeble and infirm, and now is and has been dependent on charity for her living, and there remains due on the $600 mortgage above referred to the sum of $400. Before this action was commenced, all of the children of the plaintiff and her said husband, except Herman, quitclaimed their interest in the realty in controversy to the plaintiff.

The trial court further found that the said Herman and Anna made payments of principal and interest on the said mortgages, paid taxes on the land, and put improvements thereon, etc., and that the total amount expended by both of them and their total cash equities amount to the sum of $1,469.95; that the rental value of the real property, since its conveyance to Herman, was $1,350, and the value of certain buildings and timber taken therefrom by the defendant Anna was $40; and, further, that the total cash equity of the plaintiff, including the value of the said personal property first herein mentioned, was $1,890. There was also a finding to the effect that the plaintiff, after the execution of the said conveyance, rendered substantial services on the farm, for which she received no compensation, and that during the same period she and her husband, up to the time of his death, earned wages with which they procured their clothing and necessaries, and since Herman Hardy's death, up to about eighteen months prior to the bringing of this action, she earned her own living. It appears that the present

value of the real property is $2,700, and the court found that the equities of the plaintiff and the defendants were substantially equal, and that there should be no accounting.

We have examined the evidence with care, and hold that it supports these findings of fact.

The court's conclusions of law were to the following effect:

(a) The deed dated April 28, 1896, executed by the plaintiff and her husband to Herman and Gust Hardy, should be canceled unconditionally, and the plaintiff should be adjudged to own a seven-ninths interest in the realty in fee, and is entitled to a life estate in the remaining two-ninths thereof, subject, however, to the said mortgage, upon which there is due about $400, and to immediate possession of the said property; that no repayment to the defendants, or any of them, for any advances or payments made as a result of the said transactions, be made; and that neither the plaintiff nor any of the defendants should receive any money compensation the one from the other, and that there should be no accounting between them.

(b) That the lease referred to, of date April 2, 1898, be canceled.

(c) That the final order of the probate court referred to, decreeing the defendant Anna S. Saarenpaa a life estate in the land in controversy, with remainder in fee to her child, be also canceled, and that the plaintiff recover costs and disbursements.

1. At the close of the testimony each of the defendants moved to dismiss the action on the ground that the court had no jurisdiction. The motion was denied and exceptions taken. The defendants assign this ruling as error, and make the point that the trial court had no power to annul the final decree entered in the matter of the estate of Herman Hardy, because the jurisdiction of the probate court relating to decedents' estates is exclusive, and, furthermore, that its decrees cannot be attacked in a collateral proceeding, and are conclusive unless reversed on appeal.

While it is true, as insisted by the defendants, that the probate courts have exclusive original jurisdiction over the estates of decedents, and decrees within their jurisdiction are binding until set

aside by such courts themselves or reversed on appeal, and are not subject to collateral attack for want of jurisdiction not appearing on the face of the record, it is equally true that these rules do not apply to the instant case; such jurisdiction being purely for the purpose of administration. The legal title to the land in controversy was in Herman Hardy at the time of his death, and, he dying intestate, the jurisdiction of the probate court extended to the determination of who were his creditors and to whom the estate passed under the statute upon his death. Claims of parties against the land, not depending upon the law of descent, were not involved in the administration of the estate, and the probate court did not and could not determine the question as to whether the deceased had or had not forfeited his title as to this plaintiff. The decrees of the probate court in no wise determined the rights or duties of the deceased or the defendants towards this plaintiff, growing out of the contract under which the legal title to the land was acquired. State v. Probate Court of Ramsey County, 103 Minn. 325, 115 N. W. 173, and cases cited; 2 Dunnell, Minn. Dig. § 7779.

We hold that the court below had jurisdiction, with power, this being an equitable action, to cancel the said decree of the probate court as a cloud on the plaintiff's title, in connection with the other relief granted.

2. The defendant Jacob Saarenpaa was sworn as a witness on the plaintiff's demand for examination under the statute. The record discloses that the defendants' counsel then stated: "I object to the calling of this witness for cross-examination under the statute, for the reason that he is not in any manner interested in this case." The objection was overruled. It is now claimed that the ruling was erroneous, because the witness was the husband of his codefendant Anna, and hence, under R. L. 1905, § 4660, could not be called without her consent. The objection was insufficient to raise the question now suggested. 3 Dunnell, Minn. Dig. § 10,304. In the cases cited by the defendants to sustain this point, the specific objection was made.

3. The defendants further claim that the plaintiff has been guilty of laches, and has waived any right of action by accepting perform-

ance at the hands of Herman's heirs, that these defendants have succeeded to Herman's rights in this land, and stand in his shoes. The application of the doctrine of laches depends upon the facts of the particular case, and rests largely in the discretion of the trial court. Delay must be culpable in order to become laches, and prejudice must result. Neither of these elements appear to exist in the instant case. See 2 Dunnell, Minn. Dig. § 5,351.

As to the question of waiver, the defendants base their claim upon a ground contradictory of one of the court's findings of fact, which we have already held to be sustained by the evidence, viz., that there was a substantial failure on the part of Herman Hardy and his heirs to perform the agreement which constitues the consideration of the conveyance of the land here involved.

Neither of these contentions, as to laches and waiver, can be sustained.

4. The defendants argued that the court erred in directing a cancelation of the contract and deed, because such relief is too drastic, and in effect that the findings of fact do not support the conclusions of law. We cannot so hold.

The rules concerning the application of this equitable remedy are quite well settled in this jurisdiction. Before the relief involved therein can be granted, it must appear that the parties have failed to perform their covenants in substantial and material particulars (Somerdorf v. Schliep, 43 Minn. 150, 152, 44 N. W. 1084), and that it would not be inequitable to grant the relief sought. McKenzie v. Dunsmoor, 114 Minn. 477, 131 N. W. 632. On the other hand, where it appears, as in this case, that there has been such a repudiation of the contract and failure in the performance thereof as to amount practically to a failure of consideration for the deed, the remedy should be applied. Johnson v. Paulson, 103 Minn. 158, 114 N. W. 739; McKenzie v. Dunsmoor, supra; 130 Am. St. 1056.

The more such ill-advised transactions, like the one here involved, are considered by the courts, the more clearly appears the necessity of applying to them the maxim that equity looks to the substance rather than to the form; and, without regard to the form of the agreement, where property is conveyed by voluntary conveyance,

with the understanding that the grantee will, by way of consideration therefor, furnish support and maintenance for the grantor during the latter's life, and subsequently the grantee fails substantially to perform such agreement, it should be held that the grantor has received nothing for his land, and that, by cancelation, the parties be restored to their original situation.

We think that equity has been done.

Judgment affirmed.